IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | Case No. 2:22-cr-00237(1) |
| **Plaintiff,** : | |
| : | Judge Algenon L. Marbley |
| **v.** : | |
| : | |
| **JOHN K. ECKERD, JR.,** : | |
| : | |
| **Defendant.** : | |

## OPINION & ORDER

This matter comes before this Court on Defendant John K. Eckerd, Jr.'s Motion for Specific Enforcement of the Plea Agreement (ECF No. 120) and his related Motion to Continue Sentencing (ECF No. 123). Eckerd argues that the Government breached the terms of the Plea Agreement and requests specific performance and reassignment to a new judge for sentencing. (ECF No. 120 at 3, 6). Due to this purported breach, Eckerd also requests a continuance of the sentencing schedule to permit this Court to hold a hearing and rule on his enforcement motion. (ECF No. 123 at 3). For the following reasons, Eckerd's Motions are **DENIED**.

### I. BACKGROUND

Defendant John K. Eckerd, Jr. was charged in December 2022 with financial crimes related to a Ponzi scheme, whereby Eckerd and his co-conspirators committed wire fraud and evaded paying income tax. (ECF Nos. 120 at 1; 121 at 1; *see also* ECF No. 5 ¶¶ 15, 29, 54). On November 4, 2025, Eckerd pleaded guilty. (ECF No. 118 at 4, 12–16; *see* ECF No. 84 (Plea Agreement)).

Eckerd is due to be sentenced on February 6, 2026, and sentencing memoranda are due by January 26, 2026. (ECF No. 119). On November 20, 2025, Eckerd moved for specific enforcement of the Plea Agreement, arguing that the Government had breached the Agreement's

terms when it provided the Probation Officer with a chart detailing the victims' losses, which exceeded $61 million. (*See* ECF Nos. 120-2; 121-1). Eckerd argues that in doing so, the Government "impugn[ed]" him "with responsibility for all losses arising from the Ponzi scheme or conspiracy," even though the Agreement stipulated to a loss of no more than $25 million. (ECF No. 120 at 2–3). The Government opposes Eckerd's motion, arguing that Eckerd conflates statutory restitution and loss used for purposes of the sentencing guidelines. (ECF No. 121 at 1).

The Plea Agreement governs both concepts. Loss amounts that could impact Eckerd's sentence are expressly limited, whereas the amount of restitution is not:

*Sentencing guidelines loss.* First, the Plea Agreement provided for the parties' "Sentencing Disposition," whereby the parties agreed to a "factual basis" for a term of incarceration of between 36 and 109 months. To this end, they established loss amounts for the "purposes of calculating the guidelines":

> Regarding Count 1: Pursuant to U.S.S.G. § 2B1.1(a)(1), the Base Offense Level is 7. Pursuant to U.S.S.G. § 2B1.1(b)(1)(K), the offense level should be increased by 20 levels on *loss that is more than $9.5 million but less than or equal to $25 million*.
>
> * * *
>
> Regarding Count 3: Pursuant to U.S.S.G. § 2T1.1(a)(1), the Base Offense Level is 20 based on a *tax loss of $1,028,454*. . . .

(ECF No. 84 at 3) (emphasis added). The parties stipulated and agreed that for several years, "Jason Adkins and others conspired to commit a Ponzi scheme," and that "[a]t some point, John Eckerd became a member of the conspiracy and knowingly participated in the conspiracy" as a "business partner[] with Jason Adkins in tire sales." (*Id.* at 10).

*Restitution.* Second, the Plea Agreement established that one of the statutory penalties for these crimes was "[r]estitution pursuant to 18 U.S.C. § 3663 and/or 18 U.S.C. § 3663A." (ECF

No. 84 at 2). Eckerd "agree[d] to pay restitution in an amount to be determined at sentencing." (*Id.* at 5).

Now, the question is whether the agreed-upon $25 million loss limit for the sentencing guidelines limits the Government's representations to the Probation Officer regarding the restitution that Eckerd must pay. It does not.

## II. STANDARD OF REVIEW

Plea agreements are contractual in nature, interpreted using traditional principles of contract law, and enforced according to their terms. *United States v. Ligon*, 937 F.3d 714, 718 (6th Cir. 2019) (citations omitted). Ambiguities are construed against the Government. *Id.* Moreover, the Government is held to meticulous standards of performance—it cannot breach any terms or make end-runs around its promises. *Id.*

The plain language of a plea agreement governs: courts construe them "as a reasonable person would interpret its words." *United States v. Moncivais*, 492 F.3d 652, 663 (6th Cir. 2007). When a plea agreement is breached by the Government, the defendant may obtain specific performance or the opportunity to withdraw his plea. *Santobello v. New York*, 404 U.S. 257, 262–63 (1971).

## III. LAW & ANALYSIS

The Government did not breach the Plea Agreement when it provided the Probation Officer with a restitution number higher than the maximum loss that was agreed upon for purposes of sentencing. Sentencing guidelines loss and restitution are not the same, and no part of the Plea Agreement limits Eckerd's restitution obligations.

### A. Distinct Loss Concepts

"Loss" for the purposes of a criminal defendant's sentencing guidelines range and "loss" for the purposes of restitution are distinct and different concepts. The sentencing guidelines use loss for a punitive purpose. They "instruct[] a district court to increase a defendant's offense level based on the amount of the 'loss' when determining the defendant's guidelines range." *United States v. Agrawal*, 97 F.4th 421, 435–36 (6th Cir. 2024); *see* U.S.S.G. §§ 2B1.1(a)(1); 2B1.1(b)(1)(K).

Meanwhile, the Mandatory Victims Restitution Act "requires district courts to order criminal defendants to 'make restitution to' any 'identifiable victim or victims' who have 'suffered . . . a pecuniary loss.'" *Agrawal*, 97 F.4th at 441–42 (citing 18 U.S.C. § 3663A(a)(1), (c)(1)(B)). In cases involving multiple defendants, courts may apportion restitution liability or apply it jointly and severally in cases involving multiple defendants. *United States v. Bogart*, 576 F.3d 565, 575–76 (6th Cir. 2009); 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, *the court may make each defendant liable for payment of the full amount of restitution . . .*") (emphasis added).

Thus, this Court's calculations of these two types of losses "need not match." *Agrawal*, 97 F.4th at 442. In fact, sometimes their resultant numbers will "expressly contradict" one another. *United States v. Dadyan*, 76 F.4th 955, 960 (9th Cir. 2023).

### B. The Parties' Arguments

Eckerd argues that these losses must be the same, and because they are not, the Plea Agreement has been violated. He construes the Agreement as limiting the Government to an amount of loss of $25 million or less, arguing that he does not bear "full responsibility for defrauding *all* investors" because the parties agreed that he joined the conspiracy "[a]t some point."

4

(ECF Nos. 120 at 2–3; 84 at 10). Eckerd asserts that this loss figure not only "drives the advisory sentencing guidelines calculation" but also "determines the amount of restitution owed[] and colors the basic perception as to the seriousness of the offense" because it implies that he was "responsible" for defrauding all victims owed restitution. (ECF No. 120 at 3–4). In other words, the chart showing $61 million in losses "logically and predictably undermined the plea agreement to a loss of no more than $25 million," because the Government was required to support the agreed-upon loss calculation (singular) regardless of how it was being used. (ECF No. 122 at 1–2).

The Government argues that Eckerd ignores the "actual language" of the Plea Agreement and challenges the premise that it "was bound to request restitution equal to the stipulated guidelines loss." (ECF No. 121 at 1, 3). The Government points out that restitution and loss for sentencing guidelines are legally distinct concepts and are treated differently in the Plea Agreement, which lacks any provision "limit[ing] the amount of restitution" or binding the Government to request a particular restitution amount. (*Id.* at 7).

### C. This Court's Analysis

Eckerd conflates loss and restitution, and his arguments fail. The Plea Agreement clearly provides that Eckerd's restitution could differ from the sentencing guidelines. True, the parties agreed that the "loss . . . is more than $9.5 million but less than or equal to $25 million," but that agreement was expressly limited "[f]or purposes of calculating the guidelines." (ECF No. 84 at 3). By contrast, restitution was listed as a separate and additional statutory obligation, and Eckerd agreed to pay it "in an amount to be determined at sentencing." (*Id.* at 2, 5).

It makes sense that these numbers would differ here. As a matter of law, the restitution Eckerd owes is distinct from the loss attributable to him for the purposes of the sentencing guidelines. *E.g.*, *United States v. Kronis*, 2025 WL 2444058, at *1 (N.D. Ohio Aug. 25, 2025)

5

("[T]he guidelines loss amount and restitution are two different things, which fulfill different functions."); *United States v. Woods*, 554 F.3d 611, 614 (6th Cir. 2009) (similar). Restitution compensates victims of crime, whereas sentencing guidelines loss punishes the defendant, seeking "to measure the seriousness of his or her criminal conduct." *United States v. Certified Env't Servs., Inc.*, 753 F.3d 72, 102 (2d Cir. 2014) (Rakoff, J., by designation); *United States v. Bailey*, 973 F.3d 548, 576 (6th Cir. 2020) (same).

Under the Mandatory Victims Restitution Act, a defendant in a conspiracy case can be held jointly and severally liable for all victims harmed by the scheme, *Dadyan*, 76 F.4th at 958, and restitution is not limited to the harm caused by the counts against that individual defendant (due to the scheme element). *United States v. Thomsen*, 830 F.3d 1049, 1065–66 (9th Cir. 2016); *accord Bailey*, 973 F.3d at 576 ("[A] district court does not err by using conspiracy principles to determine a defendant's amount of restitution."). Thus, the Sixth Circuit has observed that it is not "incongruous" to order restitution reflecting the loss caused by an *entire* conspiracy, "even while simultaneously finding an amount of loss that reflects only conduct closely related to the defendant." *Bailey*, 973 F.3d at 576.

In providing the restitution amount to the Probation Officer, the Government has not breached the terms of the Plea Agreement, or attempted an impermissible end run around it. There is nothing inconsistent with the Government arguing that Eckerd should be punished as though he was responsible for $25 million in losses, while also seeking to ensure that his victims collectively receive the $61 million in restitution that they are owed.[1]

---

[1] Eckerd advances several inapposite cases to challenge the consistency of the Government's action with the Plea Agreement. First, he relies on *United States v. Franco-Lopez* to argue that the Government's action was necessarily inconsistent with the terms of the Plea Agreement—this argument is misplaced. 312 F.3d 984, 989 (9th Cir. 2002). In *Franco-Lopez*, the Ninth Circuit held that Government's representation to probation that the defendant was an

6

In sum, restitution is distinct from sentencing guidelines loss.  Thus, Eckerd is wrong to assert that "the loss figure . . . determines the amount of restitution owed."  (ECF No. 120 at 3). No categorical rule limits restitution to the sentencing guidelines loss.  *See Dadyan*, 76 F.4th at 959 (affirming $17.7 million restitution calculation exceeding the sentencing loss range of $1.5 to $3.5 million).  Moreover, the pertinent language of the Plea Agreement is clear.  *See Moncivais*, 492 F.3d at 663. No specific provision in the Plea Agreement limited restitution, and the Government is not bound by a sentencing guideline loss stipulation in calculating restitution.

## IV.   CONCLUSION

It may be that the sentencing guidelines loss, and Eckerd's punishment, should reflect his role in the conspiracy or his willingness to plead guilty.  But his punishment does not bear on the

---

"organizer" of a smuggling venture was inconsistent with the plea agreement where the Government promised that it would make a safety valve sentencing recommendation, because to qualify for the safety valve, the defendant cannot be an "organizer." *Id.* at 986–87, 989 (citing U.S.S.G. § 5C1.2).  Here, there is no necessary inconsistency with different restitution and sentencing guidelines losses.

Similarly, this case is not analogous to situations where the Government agreed "to restrict the facts upon which the substantive offense is based" yet subsequently breached that agreement by provided those restricted facts. *United States v. Boatner*, 966 F.2d 1575, 1578 (11th Cir. 1992). In *Boatner*, the Government violated a stipulation regarding the amount of drugs involved in the offense when it informed probation of a much higher drug quantity attributable to the defendant. *Id.* at 1577–78.  The Government has not done anything akin to the *Boatner* or *Franco-Lopez* breaches here.  This is a conspiracy case, and Eckerd can be held liable for restitution for all the victims of the conspiracy even if some victims' direct losses are not attributable to him.

Last, because this is a conspiracy case, it is different in kind from any case that "does not involve a set of wrongdoers acting in concert," such as *Paroline v. United States*. 572 U.S. 434, 440–41, 448, 454 (2014) (finding anonymous possessor of child pornography not liable for entire, multi-million restitution amount under 18 U.S.C. § 2259 when there were thousands of possessors, defendant did not know the victim, and defendant was not the proximate cause of loss).  To the extent that Eckerd relies on *Paroline* to argue that he cannot be the proximate cause of loss for victims when his guidelines sentence does not reflect their losses, he misconstrues the reach of *Paroline*, which was not a conspiracy case.

*Franco-Lopez*, *Boatner*, and *Paroline* are not applicable here, and Eckerd's reliance on them is misplaced.

7

victims' losses.  *Bailey*, 973 F.3d at 576.  Eckerd's Motion for Specific Enforcement (ECF No. 120) is **DENIED**.

On January 9, 2026, Eckerd also sought to continue sentencing so this Court could evaluate his Motion for Specific Enforcement and implement appropriate remedies, arguing that defense counsel would need additional time to prepare for sentencing considering the Government's breach and the possible remedies.  (ECF No. 123 at 3).  But because this Court has determined that Eckerd's Motion for Specific Enforcement lacks merit, his Motion to Continue is **DENIED AS MOOT**.  Sentencing remains set for **February 6, 2026**, and sentencing memoranda remain due by **January 26, 2026**.  (ECF No. 119 at 1).

**IT IS SO ORDERED.**

ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE

**DATED:  January 21, 2026**

8