**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : **Case No. 2:22-cr-237(1)** |
| **Plaintiff,** | : |
| | : **Judge Algenon L. Marbley** |
| v. | : |
| | : |
| JOHN K. ECKERD, JR., | : |
| | : |
| **Defendant.** | : |

**<u>OPINION & ORDER</u>**

This matter comes before the Court on Defendant John K. Eckerd, Jr.'s Motion for a Writ of Habeas Corpus Ad Testificandum. (ECF No. 147). Eckerd seeks to compel the presence of his former co-conspirator, Jason E. Adkins, at his sentencing hearing, so that he may elicit Adkins' testimony. Adkins has already been sentenced for his role in the conspiracy and does not want to testify, so he has filed a Motion to Intervene, seeking to oppose the writ. (ECF Nos. 149; 150). For the following reasons, Defendant Eckerd's Motion is **GRANTED**, and Adkins' Motion is **DENIED**. The Court will issue a Writ of Habeas Corpus Ad Testificandum for Adkins' presence.

## I.    BACKGROUND

Defendant John K. Eckerd, Jr. was charged in December 2022 with financial crimes related to a tire sale Ponzi scheme, whereby Eckerd and his co-conspirators committed wire fraud and evaded paying income tax. (ECF Nos. 120 at 1; 121 at 1; *see also* ECF No. 5 ¶¶ 15, 29, 54). Eckerd pleaded guilty on November 4, 2025. (ECF No. 118 at 4, 12–16; *see* ECF No. 84). Jason E. Adkins was one of his co-conspirators. Adkins was sentenced by the Court in 2024. *See* Sent'g Tr., *United States v. Adkins*, Case No. 2:19-cr-82 (S.D. Ohio Jan. 25, 2024) (Marbley, J.) (ECF No. 58).

On January 27, 2026, Eckerd sought an evidentiary hearing in advance of his sentencing. (ECF No. 134 at 4–5).  The Court held a telephonic status conference on January 28, where Eckerd estimated that his requested evidentiary hearing would take a full day.  On January 30, the Court denied his request for an evidentiary hearing, noting that it would provide two full days for a sentencing hearing to address all evidentiary issues. (ECF No. 137 at 3).  That sentencing hearing is currently scheduled to begin on July 1, 2026.

On April 9, 2026, Eckerd filed a Motion for a Writ of Habeas Corpus Ad Testificandum. Through that motion, he seeks the testimony of Jason Adkins—who is currently incarcerated at the United States Penitentiary Hazelton in Bruceton Mills, West Virginia—at his sentencing. (ECF No. 147).  On April 29, 2026, Adkins sought permission to intervene and oppose the issuance of a writ. (ECF No. 150; *see* ECF No. 149).  Adkins argues that his testimony would be protected by the Fifth Amendment and suggests that testifying before the Court would irreparably harm him because he would miss out on his prison programming. (ECF No. 150 at 2–3).  Defendant Eckerd timely[1] opposed Adkins' Motion to Intervene. (ECF No. 152).  Under the Court's Scheduling Order, "[r]eply briefs will not be filed" for "[a]ll motions of any kind." (ECF No. 83 at 2).  Thus, these motions are fully briefed and ripe for review.[2]

## II.    LAW & ANALYSIS

### A.  Motion to Intervene

#### 1.  Intervention in a Criminal Case

Jason Adkins seeks to intervene in order to oppose Eckerd's attempt to have him testify at the sentencing in this matter.  His opposition is based on his desire not to testify in this case:  he

---

[1] The Court received Defendant Eckerd's briefing via electronic mail to chambers on May 13 due to technical issues that Eckerd's counsel experienced with the Court's electronic filing system.
[2] The Government has not taken a position on the pending motions.

asserts that he has valid Fifth Amendment concerns in light of his own criminal prosecution. Moreover, he contends that he will suffer direct and irreparable harm if he is removed from his current correctional facility and brought to testify in Court because his programming will be interrupted.  (ECF No. 150 at 2–3).

Eckerd counters that Adkins may only object on the basis of individual questions, and cannot make a blanket objection to being called to testify.  (ECF No. 152 at 2, 7–8).  Eckerd also asserts that Adkins waived his Fifth Amendment rights when he pleaded guilty in 2019 and agreed to cooperate with federal investigators.  (*Id.* at 4–7).

Neither Adkins nor Eckerd addresses a threshold matter:  the propriety of a private citizen intervening in a criminal case.  While the federal rules provide a mechanism for both mandatory and permissive intervention in *civil* cases, *see* Fed. R. Civ. P. 24(a), (b), "the Federal Rules of Criminal Procedure make no reference to a motion to intervene."  *United States v. Rakhit*, 2021 WL 1145626, at *5 (N.D. Ohio Mar. 25, 2021); *see United States v. Perry*, 360 F.3d 519, 532 n.10 (6th Cir. 2004) ("no mechanism exists for a private citizen to intervene in a criminal case").  Still, federal courts sometimes permit third parties to appear in criminal cases under certain circumstances, deriving authority from "their inherent power to manage their cases."  *Rakhit*, 2021 WL 114526, at *5 (collecting cases).  For instance, federal courts may permit intervention in criminal cases to vindicate "the public's First Amendment right of access to criminal proceedings."  *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008); *but see United States v. Martin*, 2025 WL 2484282, at *6 (W.D. Tenn. Aug. 28, 2025) (denying motions to intervene in criminal case given the court's practice "to allow third parties seeking intervention in criminal matters to file their request in a separate miscellaneous matter" to avoid "creating an ad hoc procedure that does not currently exist").

In civil cases, the party seeking to intervene bears the burden of proof—whether their invention is sought as of right or permissively.  *See United States v. Michigan*, 424 F.3d 438, 443–45 (6th Cir. 2005).  Here, Adkins has offered no legal authority that would govern his requested intervention in a criminal case and has not addressed the factors that would govern permissive or mandatory intervention in civil cases.  Regardless, even if Adkins could intervene, he has not asserted any cognizable legal interest that would be impaired absent intervention.  *Cf. In re Hotel TVPRA Litig.*, 2026 WL 799293, at *3 (S.D. Ohio Mar. 23, 2026) (Marbley, J.) (intervenor did not need to intervene to protect rights).  Adkins' ability to invoke the Fifth Amendment from the stand allows him to protect his rights without intervening.  *See JobsOhio v. EmKey Energy, LLC*, 2025 WL 3484766, at *4 (S.D. Ohio Dec. 4, 2025) (Marbley, J.) (to show that the proposed intervenor's interest might be impaired absent intervention requires a showing that the proposed intervenor would otherwise be at a disadvantage).

### 2.  *Adkins' Fifth Amendment Privilege*

An analysis of the Fifth Amendment privilege demonstrates why Adkins does not need to intervene.  Adkins cannot assert his Fifth Amendment rights at this juncture.  It is true that "[b]efore a witness . . . is entitled to remain silent, there must be a valid assertion of the fifth amendment privilege."  *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983).  But "the privilege cannot be claimed in advance of the questions."  *Id.*  Rather, an individual may only assert the privilege "with respect to particular questions, *and in each instance*, the court must determine the propriety of the refusal to testify."  *Id.* (emphasis added); *cf.* 8 Wright & Miller's Federal Practice and Procedure § 2018 (3d ed. 2026) (for deponents in civil matters, "the availability of the privilege is not a ground for vacating the notice of the deposition," but rather "[t]he proper procedure is for the deponent to attend the deposition, to be sworn under oath, and to answer those questions he or

she can answer without running a risk of incrimination"); *see generally McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924) (the privilege applies "alike" in civil and criminal cases, and "protects a mere witness as fully as it does one who is also a party defendant"). Adkins cannot make a blanket assertion of his Fifth Amendment rights before he is called to testify. Finally, to the extent that Adkins suggests that he would be "directly and irreparably harmed if he [were] removed from his current facility and transported for the Defendant's sentencing," (ECF No. 150 at 3), his argument is conclusory and fails to provide any legal authority substantiating such an interest against the Court's ability to compel the production of a prisoner for that prisoner's testimony. *See* 28 U.S.C. § 2241(c)(5).

In sum, Adkins has not established that his requested intervention in Defendant Eckerd's criminal case would be proper. Nor can he invoke his Fifth Amendment privilege at this time. And even though the Court has the inherent authority to allow him to intervene, it will not do so because he has not identified a cognizable legal interest that could be impaired absent his intervention. *Cf. Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 759 (6th Cir. 2018) (in civil matters, federal courts may consider mandatory intervention factors when evaluating whether permissive intervention is appropriate in light of the circumstances of the case). Allowing Adkins to intervene here would risk delay and prejudice to Defendant Eckerd.

### B. Motion for Writ

Next, the Court turns to Defendant Eckerd's request to bring Adkins to Court for his testimony. (ECF No. 147 at 1). District courts have the authority to grant writs of habeas corpus, including to bring prisoners "into court to testify." 28 U.S.C. §§ 2241(a), (c). This authorizes courts to issue writs of habeas corpus ad testificandum. *See Sales v. Marshall*, 873 F.2d 115, 118 (6th Cir. 1989); *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 41 (1985) ("The

Judiciary Act of 1789 codified the *ad testificandum* writ."). Production of prisoners should be ordered "only in those cases where the prisoner's physical presence will contribute significantly to . . . fair adjudication," *Holt v. Pitts*, 619 F.2d 558, 561 (6th Cir. 1980) (addressing the writ in the civil context), and courts evaluate the prospective benefit the testimony offers, security risks, costs, "and other factors bearing on the need for the prisoner's testimony vis-a-vis the difficulties attendant to securing it." *United States v. Rinchack*, 820 F.2d 1557, 1567–68 (11th Cir. 1987); *accord Adkins v. Fields*, 2026 WL 472511, at *2 (E.D. Ky. Feb. 18, 2026) (citing *Rinchack*). A district court has wide discretion in deciding whether to issue a writ of habeas corpus ad testificandum. *Rose v. Washington*, 2023 WL 9316268, at *3 (6th Cir. Nov. 1, 2023).

Defendant Eckerd specifically challenges the Government's characterization of his role in the offense. (ECF No. 152 at 2–3). He contends that he was not the leader of the conspiracy, suggesting instead Adkins played a larger role in it. (*Id.* at 3). Under the terms of the operative Plea Agreement, the Government and Defendant Eckerd stipulated that "Between in or around 2012, through and including at least 2018, Jason Adkins and others conspired to commit a Ponzi scheme. At some point, John [Eckerd] became a member of the conspiracy and knowingly participated in the conspiracy." (ECF No. 84 at 10). Additionally, Jason Adkins previously addressed Eckerd's role related to the offense in his own sentencing hearing before the Court. Sent'g Tr. at 39–40, *Adkins*, Case No. 2:19-cr-82, *supra*. Thus, the Court determines that Adkins' testimony is relevant, and may be necessary for Defendant Eckerd to receive a fair sentencing. *Rinchack*, 820 F.2d at 1568; *cf. Holt*, 619 F.2d at 561.

### III.   CONCLUSION

The Motion for Leave to Appear (ECF No. 149) by attorney Gregory S. Peterson on behalf of non-party Jason E. Adkins is **GRANTED** for the limited purpose of filing Adkins' Motion to

Intervene.  For the foregoing reasons, Adkins' Motion to Intervene (ECF No. 150) is **DENIED**.

Defendant John K. Eckerd, Jr.'s Motion for a Writ of Habeas Corpus Ad Testificandum is

**GRANTED**.

      **IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  May 18, 2026**