**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Case No. 2:22-cr-237(1)** |
| **Plaintiff,** | : | |
| | : | **Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | |
| **JOHN K. ECKERD, JR.,** | : | |
| | : | |
| **Defendant.** | : | |

**OPINION AND ORDER**

This matter comes before the Court on Jason E. Adkins' Motion to Modify Terms of the May 27, 2026 Writ of Habeas Corpus Ad Testificandum. (ECF No. 163). For the following reasons, this Motion is **DENIED**.

On November 4, 2025, Eckerd pleaded guilty to financial crimes in connection with a tire sale Ponzi scheme. (ECF No. 118 at 4, 12–16; see ECF No. 84). His former co-conspirator, Jason E. Adkins, was previously sentenced by the Court in 2024 for his role in this offense. *See* Sent'g Tr., *United States v. Adkins*, Case No. 2:19-cr-82 (S.D. Ohio Jan. 25, 2024) (Marbley, J.) (ECF No. 58). Eckerd requested Adkins' presence at his sentencing hearing, explaining that Adkins would be asked to testify about central issues regarding Eckerd's role in the Ponzi scheme conspiracy that may make a difference in the length of his term of imprisonment. (ECF No. 152 at 2–4; *see* ECF No. 147 at 1). Adkins attempted to intervene to oppose Eckerd's request. (ECF No. 150). The Court denied Adkins' request to intervene, granted Eckerd's request to have Adkins present at his sentencing, and set Eckerd's sentencing to take place on September 9 and 10, 2026. *United States v. Eckerd*, 2026 WL 1382395 (S.D. Ohio May 18, 2026) (Marbley, J.) (ECF No. 153); (ECF No. 156). The Court also issued a Writ of Habeas Corpus ad Testificandum for

Adkins' presence at that sentencing. (ECF No. 157). Now, Adkins seeks to modify the terms of the Writ. He argues that the Court should direct the United States Marshals Service to transport Adkins directly to and from the Federal Correctional Institution, Hazelton, pointing out that prior transport instances have taken months in transit, resulted in injuries, and interrupted his medical treatment. (ECF No. 163 at 2–3).

The Court is troubled by Adkins' account of injuries in transit. But he has failed to provide any basis for the relief he requests, and therefore his motion must be denied. As a threshold matter, it is unclear whether Adkins should even be able to file documents in this matter. Although he styles himself as an "Interested Party," the Court previously *denied* his motion to intervene, and only permitted his counsel to appear in this case "for the limited purpose of filing Adkins' Motion to Intervene." (ECF No. 153 at 5–7). Adkins' new motion fails to address this issue, and it is unclear whether he has standing. *See generally TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (explaining that a plaintiff must maintain a "personal interest" in a dispute "for each claim that they press and for each form of relief that they seek" at every stage of the case). Adkins presumes the Court should accept his motion but does not explain why.

Even if Adkins were still an interested party, he provides no legal authority for this Court to direct the Marshals regarding his transit. Arguments that are advanced "in a perfunctory manner, unaccompanied by some effort at developed argumentation," *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997), as well as "arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues). It is not this court's responsibility to do the work of researching and constructing legal arguments for parties, particularly those with counsel." *United States v. McGhee*, 98 F.4th 816, 824–25 (7th Cir. 2024) (citations omitted; cleaned up); *accord United States v. Rowe*, 2026 WL 507414, at *4 n.2 (S.D.

Ohio Feb. 24, 2026) (Marbley, J.) ("conclusory and underdeveloped arguments made without citation to legal authority are waived"); *cf. United States v. Johnson*, 732 F. App'x 638, 646 (10th Cir. 2018) (failure to advance argument, analysis, or cite legal authorities may waive or forfeit argument).

True, United States Marshals "must obey the mandates of federal courts and transport prisoners if the court so orders." *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 38 (1985). But the authority for such an order "must derive from some independent statutory source." *Id.* Adkins does not point to any statutory source providing the Court with the ability to direct the Marshals' methods of transporting prisoners. The law that provides the United States Marshals with their authority suggests that they have discretion to determine how to execute the directives of federal courts. 28 U.S.C. § 566 (c) ("[T]he United States Marshals Service shall execute all lawful writs, process, and orders issued under the authority of the United States, and shall command all necessary assistance to execute its duties."). Other statutes and regulations confirm this discretion. *E.g.*, 18 U.S.C. § 4086 ("United States marshals shall provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution."); 28 C.F.R. § 0.111(j) ("The Director of the United States Marshals Service shall direct and supervise all activities of the U.S. Marshals Service including: . . . Receipt, processing, and transportation of prisoners held in the custody of a marshal or transported by the U.S. Marshals Service under cooperative or intergovernmental agreements.").

Thus, many courts to consider the issue have concluded that the United States Marshals Service has "significant discretion to determine how to keep and transport prisoners, and there are no other directives specifying the procedures that the marshals must use to transport prisoners." *Menolascina v. United States*, 2013 WL 707920, at *2 (N.D. Ill. Feb. 26, 2013); *accord Adetiloye*

*v. Cass Cnty. Warden*, 2015 WL 4208708, at *4 (D.N.D. July 10, 2015) (applicable laws "governing a marshal's care and transportation of prisoners do not mandate any specific course of conduct; rather, marshals are given wide discretion"). This makes sense, because "when transporting prisoners, officials must balance competing public policy considerations, including the safety of prisoners, officials, and the public, and the use of economic resources in effecting the transport." *McKinney v. United States*, 950 F. Supp. 2d 923, 929 (N.D. Tex. 2013). Adkins' transportation is the precise type of decision that is meant to be shielded from judicial oversight, *see Crane v. United States*, 2011 WL 7277317, at *8 (D. Or. Nov. 29, 2011), because the judicial branch is "ill equipped to deal with the . . . problems of prison administration," *Turner v. Safley*, 482 U.S. 78, 84 (1987) (citation omitted), or related issues of prisoner transport. *Cf. Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) (issues like prisoner comfort should be "weighed by the legislature and prison administration rather than a court").

Finally, Adkins represents that he has been injured in transport and while housed at the Northeast Ohio Correctional Facility in conjunction with this case. But even if Adkins had standing and provided some legal basis for his motion, he does not provide evidence supporting his claims of injuries.

For the foregoing reasons, Adkins' Motion (ECF No. 163) is **DENIED**. The Clerk of Court is **DIRECTED** to terminate Jason E. Adkins as an interested party in this case and reflect that termination as being effective May 18, 2026.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: August 25, 2026**