**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Case No. 2:22-cr-237(1)** |
| **Plaintiff,** | : | **Judge Algenon L. Marbley** |
| v. | : | |
| **JOHN K. ECKERD, JR.,** | : | |
| **Defendant.** | : | |

**ORDER**

This matter is before the Court on Defendant John K. Eckerd, Jr.'s Motion to Withdraw Plea (ECF No. 181). For the following reasons, Defendant's motion is **DENIED**.

## I. BACKGROUND

Defendant John K. Eckerd, Jr. was indicted in December 2022 of one count of Conspiracy to Commit Wire Fraud in violation of 18 U. S. C. § 1349 (count 1), one count of Money Laundering Conspiracy in violation of 18 U. S.C. § 1956 (count 2), and one count of Conspiracy Against the United States in violation of 18 U.S.C. § 371 (count 3) for conduct relating to a fraudulent scheme involving sale of off-the-road tires. (ECF No. 5). On December 12, 2024, the parties filed a Plea Agreement, in which Mr. Eckerd pleaded guilty to counts 1 and 3 pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. (ECF No. 84). Under the Plea Agreement, the government and Mr. Eckerd agreed to a term of incarceration between 36 months and 109 months. (*Id.* at ¶ 8). They further agreed that, for the purposes of calculating the sentencing guideline range, the loss was more than $9.5 million but less than or equal to $25 million. (*Id.*).

On December 20, 2024, this Court held a change of plea hearing. (ECF No. 86). At that hearing, the Court conditionally accepted the Plea Agreement, pending review of the presentence

investigation report. (ECF No. 118 at 16:14–25).[1] The Court then unconditionally accepted Mr. Eckerd's plea of guilty:

> I have observed the appearance and responsiveness of Mr. John K. Eckerd, Jr. in giving his answers to the questions asked. Based on such observation and the answers given, I am satisfied that he is in full possession of his faculties. He is not suffering from any apparent physical or mental illness. He is not under the influence of narcotics or alcohol. He understands the proceeding in which he is engaged. He understands the nature and meaning of the charges and the consequences of his plea of guilty. He is aware of all plea negotiations undertaken in his behalf.
>
> I find that the defendant is fully competent and capable of entering an informed plea, that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. His plea is therefore accepted and he is now adjudged guilty of the offense.

(*Id.* at 18:10–25). Following the Court's acceptance of Mr. Eckerd's plea, Mr. Eckerd sought and obtained multiple continuances of the presentence investigation report ("PSR") process, and the initial PSR was filed on August 1, 2025. (*See* ECF Nos. 88, 89, 90, 91, 92, 93, 101, 102, 109). The PSR recommended a guideline range of 151 to 188 months' imprisonment, higher than the Plea Agreement's binding range, based in part on the probation officer's conclusion that the loss amount was $62,835,108.84. (ECF No. 109 at 20, 32). Mr. Eckerd filed multiple objections to the PSR. (ECF No. 115). The final PSR, released on November 12, 2025, contained the same guideline recommendation of 151 to 188 months' imprisonment. (*See* Final PSR at 34). Sentencing was initially scheduled for February 6, 2026. (ECF No. 119).

---

[1] The Court stated as follows:

> And I always say "conditionally" because I have not yet seen the presentence investigation report. But I will tell you, Mr. Eckerd, that I have never conditionally accepted a plea agreement and withdrew my conditional acceptance once I saw the presentence report. But please appreciate the fact that I have not yet seen the presentence report. So I conditionally accept it pending review of the presentence investigation report.

(ECF No. 118 at 16:18–25).

On November 20, 2025, Mr. Eckerd filed a Motion for Specific Enforcement of the Plea Agreement, arguing that the government breached the agreement by providing probation a chart detailing the victims' losses, which exceeded $61 million. (ECF No. 120 at 4; 120-2). Mr. Eckerd also filed a motion to continue sentencing to give the Court time to rule on his Motion for Specific Enforcement. (ECF No. 123). This Court denied both motions on January 21, 2026, concluding that the Plea Agreement's $25 million cap for losses was only for purposes of the sentencing guideline range and the agreement contained no limits regarding Mr. Eckerd's restitution obligations. (ECF No. 127 at 3).

Mr. Eckerd then filed a Motion for Discovery for Sentencing. (ECF No. 130). Following a telephonic status conference, the Court vacated the sentencing hearing set for February 6 and granted in part Mr. Eckerd's Motion for Discovery. (ECF Nos. 136, 137). On February 17, 2026, the government filed a notice of compliance with the Court's order directing the United States to produce certain categories of materials to Mr. Eckerd. (ECF No. 140). The Court later granted Mr. Eckerd's request to continue the sentencing from July 1, 2026 to September 9, 2026. (*See* ECF Nos. 146, 155, 156).

On September 9, 2026, Mr. Eckerd and the government appeared before the Court for Mr. Eckerd's sentencing hearing. (ECF No. 178). Before the sentencing began, the parties met in chambers to discuss the day's proceedings. In discussing the numerous witnesses Mr. Eckerd subpoenaed for the sentencing, the Court stated:

> I want to make one thing clear. We're going to sentence Mr. Eckerd maybe over the course of the next two days. It may not even last two days. However long it takes, we're going to get it done.
>
> This is not going to be a case where the absent guy is made the foil. And this is not going to be a case, unless we're going to back out of the 11(c)(1)(C) here and try the case -- it doesn't matter to me. We can try it or we can do

> the sentencing. But once you have accepted responsibility, we aren't trying the underlying case. . . .
>
> So this is going to be a sentencing where we're going to stick to what is pertinent to whether he gets 36 months or 109 months. But this is not going to be legal folly for either side. . . .
>
> And let me know early on whether Mr. Eckerd still accepts responsibility because, from reading your sentencing memoranda, it doesn't seem like he does. Everything is challenged. He pleads guilty, and then says, "I didn't do it."
>
> And so I'm not going to waste judicial resources trying this case. If you want to try it, we can get 12 jurors and two alternates, and we can try it as long as we wish. . . .
>
> So if Mr. Eckerd no longer accepts responsibility, if he doesn't believe that he is, in fact, guilty of the offenses to which he has pleaded guilty, then let's dispense with this and just set a trial date. . . .
>
> And I still don't see -- regardless of whether Ms. Gray represents the mother and son, I'm not convinced yet – that's not to say that they won't be allowed to testify. But I'm not convinced yet that this is germane to whether we get -- he gets 36 months or 109 months.
>
> And the one thing that I hate to waste more than time is judicial resources. You understand what I'm saying?

(ECF No. 180 at 9:22–11:17). The Court later stated "[w]e're going to do this sentencing hearing as this Court does its sentencing" and "we're going to go back in the court, and I'm going to follow my standard sentencing procedures." (*Id.* at 12:4–5, 11–13).

Instead of proceeding to sentencing, however, Mr. Eckerd informed the Court after a recess that he wished to withdraw his guilty plea. (*Id.* at 15:17–20). The Court ordered briefing to address whether Mr. Eckerd may withdraw his plea. (ECF No. 179). Mr. Eckerd filed a Motion to Withdraw his guilty plea (ECF No. 181), the government filed an opposition (ECF No. 182), and Mr. Eckerd filed a reply (ECF No. 183). The matter is now ripe for review.

## II. LAW & ANALYSIS

Federal Rule of Criminal Procedure 11(d) provides that a defendant may withdraw a plea of guilty:

(1) before the court accepts the plea, for any reason or no reason; or

(2) after the court accepts the plea, but before it imposes sentence if:

(A) the court rejects a plea agreement under Rule 11(c)(5); or

(B) the defendant can show a fair and just reason for requesting the withdrawal.

Fed. R. Crim. P. 11. Although the Court deferred final acceptance of the Plea Agreement until viewing the PSR, the Court unambiguously accepted Mr. Eckerd's plea of guilty at the hearing on December 20, 2024. (ECF No. 118 at 18:10–25); *see also United States v. Hyde*, 520 U.S. 670, 674 (1997) (holding "[g]uilty pleas can be accepted while plea agreements are deferred, and the acceptance of the two can be separated in time."). Mr. Eckerd does not dispute this. (*See* ECF No. 181 at 7 ("[T]he Court accepted and entered Mr. Eckerd's guilty plea.")). The question then is whether Mr. Eckerd can withdraw his guilty plea under Rule 11(d)(2).

Mr. Eckerd first argues that this Court de facto rejected the Plea Agreement at the September 9 hearing and thus he is entitled to withdraw his plea as a matter of right under Rule 11(d)(2)(A). (ECF No. 181 at 12–14). This Court did not reject the Plea Agreement at the hearing on September 9. The Court was merely attempting to set the record straight on the purpose of the proceeding—to determine the appropriate sentence for Mr. Eckerd consistent with the Plea Agreement—in light of the numerous witnesses Mr. Eckerd intended to call, including his co-conspirator, Mr. Adkins, and Mr. Adkins' wife and son. (*See* ECF No. 180 at 10:14–16 ("So this is going to be a sentencing where we're going to stick to what is pertinent to whether he gets 36 months or 109 months"); *id.* at 11:11–15 ("But I'm not convinced yet - - that's not to say that they

won't be allowed to testify. But I'm not convinced yet that this is germane to whether we get - - he gets 36 months or 109 months.")). At no time did this Court say it was rejecting the Plea Agreement. In order to reject the Plea Agreement, the Court would have to inform the parties "on the record and in open court" that it "rejects the plea agreement" and follow the additional provisions of Rule 11(c)(5). This Court did not do so, and it did not intend to do so. Instead, as evidenced by the Court's statements immediately after the statements Mr. Eckerd points to as "effectively rejecting" the Plea Agreement, the Court intended to "go back in the court, and . . . follow [this Court's] standard sentencing procedures." (ECF No. 18:11–13).[2]

Since the Court has not rejected the Plea Agreement, Mr. Eckerd must show a "fair and just reason for requesting the withdrawal" under Rule 11. The Sixth Circuit has articulated a seven-factor test when determining whether a defendant meets this standard:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior

---

[2] Mr. Eckerd argues only that the Court has already effectively rejected the Plea Agreement and does not ask the Court explicitly to reject the Plea Agreement now. To the extent his arguments can be read to make such a request, the Court rejects it. The Court has "broad discretion in deciding whether or not to accept a plea agreement." *United States v. Moore*, 916 F.2d 1131, 1135 (6th Cir. 1990). But a "court's discretion is not unfettered." *In Re United States*, 32 F.4th 584, 594 (6th Cir. 2022). If the Court rejects a plea agreement, "it must explain why" and "its explanation must be sound, not arbitrary, invidious, or pursuant to a categorial policy." *United States v. Lanier*, 2025 WL 3244491, at *2 (6th Cir. Nov. 20, 2025) (internal quotations omitted). The Court does not see a sound reason to reject the Plea Agreement here. Indeed, rejecting the Plea Agreement now would be contrary to the sound administration of justice because it would allow Mr. Eckerd to make an end-run around his burden to show a "fair and just" reason for withdrawal as required by Rule 11. As explained in detail below, Mr. Eckerd cannot meet that standard here. The Court will not reject the Plea Agreement in these circumstances. *See United States v. Asefa*, 2025 WL 3274792, at *7 (S.D. Ohio Nov. 25, 2025) (finding no sound reason to reject plea agreement where defendant could not meet burden to show "fair and just" reason for withdrawal).

> experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara,* 27 F.3d 1174, 1181 (6th Cir.1994)). No one factor controls and the list is nonexclusive. *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008). The Sixth Circuit has "emphasized that the aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *United States v. Benton*, 639 F.3d 723, 727 (6th Cir. 2011) (quoting *Bashara*, 27 F.3d at 1181). Considering the *Bashara* factors here, the Court concludes that Mr. Eckerd has not met his burden of showing a fair and just reason to withdraw his plea.

**1. The Amount of Time that Elapsed Between the Plea and the Motion to Withdraw**

Perhaps most importantly, the amount of time that has elapsed between Mr. Eckerd pleading guilty and his motion to withdraw weighs heavily against Mr. Eckerd's ability to withdraw his plea. He pleaded guilty at the December 20, 2024 hearing and first informed the Court of his desire to withdraw the guilty plea at the September 9, 2026 hearing—over a year and eight months later (628 days). The Sixth Circuit has routinely held that far shorter delays weighed against a defendant. *See, e.g.*, *United States v. Simmons*, 794 F. App'x 461, 467 (6th Cir. 2019) (holding defendant's forty-six-day delay weighed against withdrawal because the Sixth Circuit "has consistently found similar delays to be excessive"); *United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004) (finding "unjustified 75-day delay, alone, supported the court's denial of a motion to withdraw"); *United States v. Durham*, 178 F.3d 796, 799 (6th Cir. 1999) (concluding seventy-seven-day delay was the "strongest factor supporting the district court's denial of [defendant's] motion" to withdraw guilty plea); *Haygood*, 549 F.3d at 1053 (noting 138 day-delay

"weighs heavily against" defendant); *United States v. Ellis*, 470 F.3d 275, 282 (6th Cir. 2006) (holding "that the prolonged delay" of 191 days "weighs heavily against Defendant").

Indeed, a "delay of more than six months presents a defendant with an almost insurmountable obstacle to withdrawal." *United States v. Culp*, 608 F. App'x 390, 391 (6th Cir. 2015). And the Sixth Circuit has "declined to allow plea withdrawal when intervening time periods were as brief as one month." *Benton*, 639 F.3d at 727 (internal citations omitted). There is no question, then, that Mr. Eckerd's lengthy delay weighs against him here. He does not argue otherwise and instead only argues there was sufficient justification to disregard the delay. (ECF No. 183 at 11).

**2. The Presence (or Absence) of a Valid Reason for Failure to Move for Withdrawal Earlier**

Turning, then, to the next factor, the Sixth Circuit has held that "a defendant's reasons for seeking to withdraw are "more closely scrutinized when he has delayed his motion for a substantial length of time." *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (internal citations omitted); *see also United States v. Troutman*, 2024 WL 3742719, at *6 (S.D. Ohio Aug. 8, 2024) ("The more substantial the delay, the more valid a defendant's justification must be."). Mr. Eckerd's reasons for seeking to withdraw do not stand up to close scrutinization.

First, Mr. Eckerd contends that this Court's comments at the September hearing constitute a "fair and just reason" to withdraw his plea and that he moved to withdraw immediately thereafter. (ECF No. 183 at 11). While the Court's comments may have been the catalyst for Mr. Eckerd's filing of his motion to withdraw, the Court's comments cannot change the legal standard Mr. Eckerd must meet under Rule 11(d)(2)(B). The crux of the Court's comments, in the context of a discussion about the numerous witnesses Mr. Eckerd intended to call at the sentence hearing, was to caution the parties not to "waste . . . judicial resources" and instruct them to focus on the

"germane" issue—whether Mr. Eckerd "gets 36 months or 109 months." (ECF No. 180 at 11:11–17).

It is true, as Mr. Eckerd posits, that the Court perceived a lack of acceptance of responsibility from Mr. Eckerd for the full harm at issue in this case. But nothing in that regard changed from the time Mr. Eckerd pleaded guilty nearly two years ago to now. Indeed, Mr. Eckerd's "consistent position has been that he accepts responsibility *in part* for the tire fraud." (ECF No. 175 at 2 (emphasis added)). The Court's acknowledgement of Mr. Eckerd's "consistent position" cannot be a new reason to withdraw his plea. Perceiving Mr. Eckerd's lack of full acceptance of responsibility, the Court ordered briefing on Mr. Eckerd's ability to withdraw his plea after Mr. Eckerd so requested. Having the benefit of that briefing before it now, the Court concludes based on the case law that Mr. Eckerd cannot now withdraw his plea because he "believes he made a bad choice in pleading guilty." *Benton*, 639 F.3d at 727; *See also United States v. Sydnor*, 762 F. App'x 284, 288 (6th Cir. 2019) (Rule 11 does not provide a remedy "for buyer's remorse").

Next, Mr. Eckerd relies on the government's disclosure of new materials in February 2026. (ECF No. 181 at 15; ECF No. 183 at 12–13). He contends that the information contained exculpatory evidence such that the government cannot prove its case against him beyond a reasonable doubt. But Mr. Eckerd had all of the evidence at issue at least as of February 17, 2026, when the government filed a notice of compliance with the Court's order directing the United States to produce the materials to Mr. Eckerd. (*See* ECF No. 140). Two hundred and four days elapsed between February 17 and Mr. Eckerd's first expression of his desire to withdraw his plea at the September 9 hearing. Even accounting for the voluminous nature of the discovery, that delay is far too long. *See Benton*, 639 F.3d at 727 (refusing to excuse a period of delay of three

months and stating "[o]nce [defendant] and his counsel became aware of new developments that might be relevant to his case, it was incumbent upon them to take action within a reasonable period of time.").

After reviewing the newly released materials, Mr. Eckerd could have moved to withdraw his plea. Instead, he used the materials to argue that he should not be held responsible for all of the loss attributed to him by the PSR (not none of it). (*See* ECF No. 167 at 9–16 (Mr. Eckerd's sentencing memorandum citing the evidence to dispute the PSR's loss calculation and certain enhancements)). Even the day of the September hearing, Mr. Eckerd was prepared to plead guilty despite the evidence he now argues should justify the withdrawal. (*See, e.g.*, ECF No. 180 at 11:22–25). This suggests the Court's comments motivated Mr. Eckerd's motion, not the disclosure of evidence in February. The Court concludes in this case the evidence disclosed 204 days earlier cannot justify Mr. Eckerd withdrawing his plea.

Finally, Mr. Eckerd points to his Motion to Enforce the Plea Agreement as evidence that he has a "fundamentally different understanding of the Plea Agreement" than the Government. (ECF No. 181 at 15). Again, Mr. Eckerd's purported justification is too late. This Court denied Mr. Eckerd's motion on January 21, 2026. (ECF No. 127). To the extent Mr. Eckerd is arguing that the Court's denial shows there was no meeting of the minds (ECF No. 183 at 14–15), he had 231 days to seek to withdraw his plea on that basis before the September hearing. His delay cannot be excused. *See Benton*, at 639 F.3d at 727. And in any event, Mr. Eckerd's argument stems from dissatisfaction with the PSR's recommended guideline range based on disputes over the amount of loss and his role in the fraudulent scheme. But the "Sixth Circuit has explicitly found that defendants are not permitted to plead guilty and then use their PSR to their advantage in seeking to withdraw a guilty plea." *Asefa*, 2025 WL 3274792, at *4 (quoting *United States v. Dalalli*, 651

F. App'x 389, 401 (6th Cir. 2016)); *see also United States v. Poole*, 2 F. App'x 433, 438 (6th Cir. 2001) (holding "courts more closely scrutinize motions to withdraw guilty pleas which follow significant delays and potential review of presentence reports"). Given the substantial delay in seeking to withdraw his guilty plea, the Court concludes that Mr. Eckerd has not shown a sufficiently valid reason for failing to move to withdraw earlier. This factor thus weighs against withdrawing the plea.

**3. Whether the Defendant Has Asserted or Maintained His Innocence**

The third factor, whether Mr. Eckerd has maintained his innocence, also weighs against allowing Mr. Eckerd to withdraw his plea. It is not entirely clear from Mr. Eckerd's motion whether he is now asserting his innocence. He emphasizes, for example, his view that the government will be "unable to prove its case in full against him beyond a reasonable doubt" which is not the same thing as claiming actual innocence. (*See* ECF No. 183 at 13; *see also* ECF No. 15 at 181 at 15 ("Thorough review of these *Brady* materials has revealed the Government's inability to prove its case at trial beyond a reasonable doubt.")). But he also makes passing references to his "claims of innocence" (ECF No. 181 at 15) and "testify[ing] to his innocence in his own defense" (ECF No. 183 at 13).

In any event, Mr. Eckerd has certainly not maintained his innocence. As recently as the day before he asked the Court to withdraw his guilty plea, Mr. Eckerd stated in his sentencing reply brief that his "consistent position has been that he accepts responsibility in part for the tire fraud and in full for the tax offense." (ECF No. 175 at 2). Indeed, the theme of all of Mr. Eckerd's arguments on acceptance of responsibility to date seems to be that he is not responsible for all the loss attributed to the tire scheme, just some of it—not that he is not at fault for any part of the conspiracy. (*See, e.g.*, ECF No. 120 at 1–2 ("It was and remains Mr. Eckerd's contention that he

did not knowingly participate in the full range of fraud alleged in this case as to the full time frame nor as to the breadth of those victimized by his associate Jason Adkins.")). Even after he received additional evidence from the government, for example, his position was that he was not the leader of the conspiracy, not that he was not guilty. (*See e.g.*, ECF No. 167 at 7 (citing evidence to support his contention that "Eckerd should be found to have played a more limited role and inflicted lesser harm than other participants")). This factor thus weighs against withdrawing the guilty plea. *See, e.g.*, *United States v. Goddard*, 638 F.3d 490, 494 (6th Cir. 2011) ("[T]he absence of a defendant's vigorous and repeated protestations of innocence support the denial of a motion to withdraw a guilty plea.") (internal quotations omitted).

**4. Circumstances Underlying the Entry of the Guilty Plea**

Turning to the fourth factor, the circumstances surrounding Mr. Eckerd's entry of the guilty plea also weigh against Mr. Eckerd's ability to withdraw his plea now. The Court held a thorough Rule 11 colloquy, during which Mr. Eckerd acknowledged he was pleading guilty knowingly and voluntarily. (ECF No. 118 at 10–25). He indicated he benefitted from the assistance of counsel and affirmed that he was satisfied with his lawyer's representation. (*Id.* at 9–23). The "record indicates that Defendant understood what he was doing and the constitutional rights he was waiving when he entered the guilty plea." *Ellis*, 470 F.3d at 285. The circumstances surrounding the entry of his plea then support the denial of his motion to withdraw. Mr. Eckerd does not attempt to argue otherwise.

**5. Defendant's Nature and Background**

The fifth factor, Mr. Eckerd's nature and background, also supports denying his motion to withdraw his guilty plea. Mr. Eckerd has a high school diploma. (PSR at 30). The government states that Mr. Eckerd has founded and run multiple businesses. (ECF No. 182 at 15 (citing PSR

to state Mr. Eckerd ran a television-production company, an armored truck company, a satellite-technology company, and a luxury doomsday bunker company)). Mr. Eckerd does not dispute the government's characterization of him as an educated businessman sophisticated enough to develop a multi-million-dollar net worth. He states only that there are no experiences in his life that "prepared him for navigating the complex issues" in his case. (ECF No. 183 at 12, 14). Given that nothing in the record "suggest[s] an inability to understand the proceedings," the Court concludes this factor weighs against Mr. Eckerd's ability to withdraw his plea. *See United States v. Martin*, 668 F.3d 787, 796 (6th Cir. 2012).

Indeed, the Sixth Circuit has found this factor to weigh against criminal defendants with less education and experience than Mr. Eckerd. *See, e.g.*, *Martin*, 668 F.3d at 796–97 (concluding the record "strongly suggests" nothing in defendant's background would prevent him from understanding his plea where defendant had "some high school education" and "speaks English" even though defendant claimed he was "not that smart"); *United States v. Gray*, 627 F. App'x 465, 470 (6th Cir. 2015) (finding defendant's background supported the conclusion that he understood the nature of court proceedings where defendant "obtained a GED, and has worked in a factory and in an auto parts store"); *United States v. Watkins*, 815 F. App'x 22, 26 (6th Cir. 2020) (concluding pro se defendant's background did not support his motion to withdraw where he "completed the twelfth grade" and demonstrated in his pro se filings he is a "capable reader and writer").

**6. Defendant's Prior Experience with the Criminal Justice System**

Regarding the sixth factor, Mr. Eckerd's prior experience with the criminal justice system supports denying his motion to withdraw his plea. Most notably, as the government points out, Mr. Eckerd previously pleaded guilty in federal court for Conspiracy to Commit Money

Laundering. (ECF No. 182 at 16 (citing PSR at ¶ 102)). As with the fifth factor, Mr. Eckerd's only response to this factor is that "there are few . . . experiences with the criminal justice system that could have prepared a defendant for the complexity of the issues" in his case. (ECF No. 183 at 14; *see also id.* at 11–12). Regardless of the exact details of each case, Mr. Eckerd's previous experience pleading guilty to a federal financial crime is relevant to show he was "familiar with the system and was aware of the ramifications of entering his guilty plea." *Benton*, 639 F.3d at 728; *see also Simmons*, 794 F. App'x at 468 (holding prior experiences with the criminal justice system weighed against withdrawal when defendant had prior federal drug charge to which he pled guilty"); *Durham*, 178 F.3d at 799 (prior conviction for bank robbery weighed against granting motion to withdraw).

**7. Potential Prejudice to the Government**

Finally, turning to the last factor, the Sixth Circuit has held that "the government does not need to establish prejudice" when a defendant "has failed to establish a fair and just reason for withdrawing his guilty plea." *Ellis*, 470 F.3d at 286; *see also Benton*, 639 F.3d at 729 ("[B]ecause all preceding factors weigh against [defendant], the government is not required to show that it would be prejudiced by withdrawal of the plea."). Because Mr. Eckerd has not shown a fair and just reason for withdrawal here, the government need not show prejudice. That is not to say the government has not established prejudice here—the Court need not, and is not, deciding this issue. *See Gray*, 627 F. App'x at 470 ("The district court did not consider this factor, which this Court finds appropriate.").

In sum, the Court concludes after weighing the *Bashara* factors that Mr. Eckerd cannot withdraw his guilty plea. His Motion to Withdraw Plea (ECF No. 181) is therefore **DENIED**.

## III. CONCLUSION

Mr. Eckerd's Motion to Withdraw his Plea (ECF No. 181) is hereby **DENIED**. The parties are **ORDERED** to appear for the Sentencing Hearing on **December 1 and 2, 2026**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: November 12, 2026**